Sneed, J.,
delivered the opinion of the court.
The defendants were operating a rolling mill for the manufacture of bar iron, near Memphis, but outside the corporate limits of the city. They owned some drays which were kept at the mill, but which were used in the free delivery of iron manufactured at the mill, to their customers and merchants within the corporate limits. The defendants themselves, lived at or near the mill, and without the corporate limits. They used their drays also, in gathering up and transporting to the mill, such scrap iron as they could from time to time, obtain in different parts of the city. A li *533 cense tax upon the privilege of thus using the drays was demanded of them by the city — which they finally paid under protest, and under an agreement that the question of their liability should be determined by the courts, and if determined in their favor, the amount should be refunded to them. An agreed case was thereupon submitted to the judge of the Second Circuit Court at Memphis, and judgment rendered in favor of defendants. The city appealed.
The city claims the right to demand the license tax in question, under an ordinace in the words following : “ Every owner of a wagon or other vehicle, kept or used for free delivery of goods to customers or others in the city, for each vehicle per annum, $10.” The. ordinance was adopted by the City Council under the authority of the amended charter of the city, passed on the 1st of December, 1869, which gives the city the power to “ license and regulate drays, carts, hackney coaches, and other vehicles used in the city. It is insisted, that the words, “other vehicles” used in the ordinance, do not embrace drays, and in support of this view, an argument is presented based upon the peculiar phraseology of certain preceding sections of the same ordinance, upon the same subject. Thus it is provided in one section, that' every owner of a cart, wagon or dray drawn by one horse, and not including carriers of passengers or baggage, running for hire, is required to pay a license tax of ten dollars a year. Another, and the section next following the above, imposes upon a two-horse vehicle as mentioned in the last section, a tax of $20 per an- *534 mm. The next a license tax $30 a year upon a three-horse vehicle. The next provides that every owner of an omnibus, hack, carriage, or other vehicle,, seeking custom upon the streets, or visiting the railroad depots or steamboat landing, or other public places, for the purpose of procuring custom, shall pay a license tax of $20 for each vehicle. And the next that every carriage or other vehicle kept exclusively for use at funerals for hire, shall pay a license tax of twenty dollars a year for each vehicle. Then comes the twenty-fifth section now in judgment, providing that every owner of a wagon or other vehicle kept or used for free delivery of goods to customers or others in the city, for each vehicle ten dollars per annum. It is urged that the peculiar phraseology of these preceding sections, show by fair construction that it was not the purpose of the council in adopting this ordinance, to include drays in the words “ other vehicles,” and in support of this view, the case of McGrath v. Loague, 6 Col., 340, is cited. But that case in our judgment may be distinguished from this. It involved the construction of the revenue acts of 1867-8, sec. 5, which imposed a privilege tax upon all hacks, carriages, or vehicles running for hire, and it was held that the words in that section, “ or vehicles running for hire” did not include drays. But the decision in that case is rested expressly upon the ground that the statute undertakes in a subsequent clause, to classify the particular vehicles intended ■ to be taxed, and -fixed the specific tax upon each by name, not including drays.
*535 We think the case in judgment may be rested on other grounds, without positive conflict with that case. When that case was determined, there was no law expressly authorizing the imposing of a privilege tax upon drays, and in a matter of State and county taxation, it was held that in the absence of any positive statute, no such tax could be imposed. In the case before us, the amended charter authorizes the city to impose a privilege tax upon drays, and under this authority, the tax in question was imposed. It must first be considered then, whether it be competent for the Legislature to authorize a municipal corporation to impose a privilege tax upon any corporation, or privilege not taxed by the general law. It was held in the case of Nashville v. Thomas, 5 Col., 600, in regard to the taxation of bank stock, that a municipal corporation could not levy taxation upon properties or privileges, other than such as are taxable under the statutory law of the State. In that case, the city of Nashville had adopted an ordinance taxing the stock in national banks, and this ordinance was adopted under the general taxing power of the municipal government, and not under any special charter privilege, to tax that particular character of stock. In the case before us, the special power to tax drays used in the city, is conferred by the amended charter, and we think the Legislature in the absence of any constitutional inhibition, had the right to delegate this power to the city government.
A city government is a peculiar polity. It is an imperium in imperio. Its. necessities and wants are *536 distinguished from those of the general public, and it has its sources of revenue, which in the nature of things, do not belong to all the State alike. Its burthens are also different from those which rest upon the general public, and those burthens create the absolute necessity for the peculiar prerogatives which have always attached to municipal governments.
It has never been questioned therefore, that the chartered privileges of a city corporation, which distinguish it from the general law, are valid and constitutional, where they merely recognize and make effectual the police powers essential to maintain itself within itself. And among its first duties and burthens, is to establish and maintain safe and agreeable streets and highways for the • public, and they are answerable to the general law if they do not. It would seem therefore, that the use by the owners of vehicles of the streets and highways thus established, would be a privilege upon which a tax might be most properly imposed, and especially that the employment as an occupation of any vehicles upon the streets calculated to injure and wear them away, would be a legitimate subject of privilege taxation, and conceding that such taxation is not authorized by the general law, as applicable to the whole state alike, yet, if it be not forbidden, we can see no valid objection to the exercise of the power in a city government. Thus it has been said by this Court, that the ordinances and modes of administration of municipal corporations, are not invalid as partial laws, for the reason that they *537 are applicable only to persons residing or being within the ■ limits of the municipality: 6 Col,, 390.
The Constitution authorizes the Legislature to create municipal corporations, and to confer upon them such powers as are appropriate to them. We hold there is nothing in the amended charter authorizing this tax that is objectionable, and we are next to consider, whether the words “ other vehicles ” used in the ordinance, include the vehicle commonly called a dray. It seems to us, that the common sense of the proposition must be the law of it, and without further discussion, we hold that a dray being a vehicle other than the vehicle named in the ordinances, is necessarily embraced within its provisions and meaning, and that there is nothing in the section in question, or in the phraseology of the other sections referred to, which forbids this reasonable and material construction of unambiguous words.
But the defendants insist, that they are not living within the corporate limits, and their drays and the animals that draw them are kept outside the city, except when plying their avocation within it, and therefore, they are not liable. We can not yield to this argument. The privilege is exercised within the city and along its streets, and this is the daily business of the draymen and their drays. The privilege taxed is the use of the drays in the city, and it can certainly make no difference where the beneficiary resides.
Reverse the judgment.